## Upper Leacock School District.

*Proceedings to take property for school purposes—Appeal from award of viewers—Withrawal of proceedings—Damages to owners.*

In proceedings to take private property for school purposes, where members of the school board entered, measured and staked the ground, and notified the owner not to use it, and it was more or less used by the school children as a playground, but was never formally opened up or taken over by the board, the school board may withdraw all proceedings after the viewers have fixed the damages and the board has appealed from their award, which appeal is undetermined, provided a proper allowance is made to the owners for damages actually sustained and counsel fees, contingent on the withdrawal of the proceedings.

Proceedings to take property for school purposes. Appeal from award of viewers. Petition for leave to withdraw proceedings. C. P. Lancaster Co., Trust Book No. 25, page 187.

*M. G. Schaeffer*, for petition; *John M. Groff*, contra.

LANDIS, P. J., June 25, 1921.—On Oct. 2, 1920, by a majority vote of the Board of School Directors of Upper Leacock Township, it was resolved that the board should select for school purposes a lot of ground adjoining the Bareville Public School on the west, containing in front along the New Holland Turnpike 82 feet, more or less, and extending in depth 420 feet, more or less, and containing 128 perches of land, the same being the property of Harriet Sheaffer, wife of Solomon Sheaffer. As the board of school directors and Harriet Sheaffer were unable to agree as to the damages occasioned by the taking, a petition was presented to this court, asking for the appointment of viewers to fix the same. Thereupon the court appointed viewers, and on April 25, 1921, after a hearing duly had, they ascertained said damages to be $2500. From this award the school district within the statutory period appealed.

The land was not, according to the claim of the petitioners, entered upon nor occupied by the school board for school purposes or any other purposes. It is admitted, however, that it was staked off prior to the passage of the original resolution for the taking, and was subsequently surveyed after the damages had been assessed. As the damages were deemed by the school directors to be excessive, they duly adopted, on May 21, 1921, a resolution,

directing that their petition should be presented to this court, asking authority to withdraw all the proceedings.

In answer to this application, the respondent asserts that the school board have taken actual possession of this land, staked it off, notified her that she could not use it, and that their school children have, at least a portion of the time, played upon it.

Depositions were taken by both parties. They do not seem to vary much in actual effect. S. R. Myer, the secretary of the board, testified that, some time during the latter part of October or the beginning of November, 1920, most of the members of the board went to this property, walked through the lot and measured the distance to make a straight line; that they then drove the stakes, and, after that, they told the Sheaffers that this ground belonged to the school district. He also admitted that the children might have see-sawed on it a little during the last few weeks of school. The respondents testified that it was occupied and used by the children as a playground, which was the purpose for which it was to be taken by the school district; but there is no evidence that the school board opened it up generally or authorized it to be used for such purposes. The fence between the school property and that of the respondent was never removed.

In section 602 of art. VI of the School Code of May 18, 1911, P. L. 347, it is provided that, "in order to comply with the provisions of this act, and subject to the conditions thereof, the board of school directors of each district is hereby vested with the necessary power and authority to acquire, in the name of the district, by purchase, lease, gift, devise, agreement, condemnation or otherwise, any and all such real estate, either vacant or occupied, as the board of school directors may deem necessary to furnish suitable sites for school buildings and playgrounds for said district, or to enlarge the grounds of any school property held by such district. . . ." Section 607 declares that "the title to all real estate acquired by any school district in this Commonwealth by condemnation proceedings, as herein provided for, shall be vested in such school district in fee simple." Sections 609 and 610 set out the plan to be pursued when land is to be taken for school purposes, and section 611 declares that "if no exceptions are filed to, or appeal taken from, said report by any party interested within thirty days after the filing thereof, the same shall be confirmed absolutely by the court, and the amount awarded therein to any person shall be a valid debt and obligation of said school district. . . ."

In 15 Cyc., 937, it is said: "The condemnation proceedings may be dismissed or abandoned at any time prior to final judgment, or final confirmation of the report of the commissioners or appraisers appointed to assess damages or compensation, or before the compensation has been paid or deposited in the manner provided by law, or the right of the property owner to compensation has otherwise become vested. The proceeding may be abandoned even after the damages are assessed, and a reasonable opportunity should be given, after the price of the land is fixed, for the petitioner to reject the award and abandon the proceeding. The right to abandon is not lost by the taking of an appeal by either the condemning party or the owner. But after a final judgment of condemnation has been entered, or the amount of compensation has been finally fixed and judgment therefor rendered, or in any other way the land owner has acquired a vested right to compensation, as where the same has been paid or deposited according to law for his benefit, the condemning party cannot abandon the proceedings so as to deprive the owner of his right to the compensation awarded, especially where the damages are limited to those actually sustained. The right to abandon or dismiss a proceeding is not

1 D. & C.

lost by taking possession of the property under statutory authority pending the proceedings, or by a mere entry to lay out the improvement, or a mere wrongful or unlawful taking of possession; but it has been held that if, by the owner's express or implied consent, the property is taken or damaged before compensation is made, the owner has a vested right in the compensation. . . ."

There seems to be in this State a distinction made between the taking of land by a private and by a public corporation. In the case of a private corporation, when a sufficient bond with sureties approved by the court has been given to a land owner for land taken and appropriated, the owner's title to the land is divested, and his only remedy is upon the bond, in connection with the statutory remedy for the assessment and collection of damages: Fischer v. The Catawissa R. R. Co. and The Philadelphia & Reading Ry. Co., 175 Pa. 554; Dilts v. Plumville R. R. Co., 222 Pa. 516. On the other hand, in Dillon on Municipal Corporations (3rd ed.), § 608, it is said that where municipal corporations have the power to take private property for public use, they may, at any time before taking possession thereof under completed proceedings or before final confirmation, recede from or discontinue the proceedings they have instituted. The text-writer adds: "Until assessment of damages has been made, the amount cannot be known; and it is reasonable that, after having ascertained the expense of the project, the corporation should have a discretion to go on with it or not, as it sees fit." In Funk's Admin'rs v. Wayneboro School District, 18 W. N. C. 447, the Supreme Court held that "in proceedings for the taking of land for school purposes under the Act of April 9, 1867, P. L. 351, where there has been no actual or permanent taking of the land, the petitioners may withdraw all proceedings at any time before final confirmation of the report of viewers;" and in Appointment of Viewers for Pine Grove Township School District, 26 Dist. R. 634, it was decided that "in proceedings to take private property for school purposes, where the school district has entered upon the land and staked it off, and has adopted a resolution determining that the property is required for such purposes, and has petitioned for and obtained the appointment of viewers to ascertain the damages, but has not taken any actual possession of the property, the school district may withdraw the proceedings after the viewers have met and fixed the damages, but before their report has been finally confirmed."

It is true that in Wood v. Trustees of the State Hospital for the Insane at Warren, Pa., 164 Pa. 159, it was decided that "where there has been such an actual taking under the power of eminent domain as invests the donee of the power with title and gives to the land owner a vested right of compensation, the former cannot be permitted to discontinue the condemnation proceedings without the consent of the latter. This rule applies not only to railroad corporations, but also to municipal and quasi-municipal corporations." However, I am of the opinion that this latter case is not effective in the present proceedings, because the damages had not been ultimately fixed and the school district had not occupied the premises in such a way as to divest finally Mrs. Sheaffer's title.

I am, nevertheless, of the opinion that the school district should compensate Mrs. Sheaffer for the damages which she has sustained by reason of the action of the directors in commencing the proceedings for the taking of her land; and while there does not seem to be any definite method set out in the act of assembly whereby to fix such damages, I am inclined to think that this can be done by an allowance to withdraw the petition, subject to the condition that the district pays the damages incurred. I am convinced that $250 would be

fair compensation, to which should be added a counsel fee of $50; and, if these conditions are complied with, the proceedings will be considered as withdrawn.

Leave to withdraw proceedings granted, upon payment by the school district of $250 damages and $50 counsel fee.

From George Ross Eshleman, Lancaster, Pa.